USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 10/3/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

EDWARD PETERSON,

                            Plaintiff,

    - against -

HOME DEPOT U.S.A., INC.,

                            Defendant.

------------------------------------------------------------x

**ORDER**

11 Civ. 5747 (ER)

Ramos, D.J.:

Plaintiff Edward Peterson ("Plaintiff") brings this action involving a personal injury claim against Defendant Home Depot U.S.A., Inc. ("Defendant"), alleging that a Werner, Model 356, Type III, 6-foot, aluminum stepladder (the "Ladder") sold to him by Defendant failed due to a manufacturing defect when the Ladder collapsed on December 30, 2007 as Plaintiff was cleaning a roof gutter on his house. The issue currently before the Court is whether the Plaintiff should be permitted to reopen discovery for the purpose of conducting metallurgical testing on the Ladder. For the reasons set forth below, Plaintiff's request is DENIED.

**I.   Background**

The parties' initial discovery plan, dated March 23, 2012, required expert reports to be served no later than August 23, 2012 and set the discovery cut-off for September 23, 2012. Doc. 5. On September 21, at the request of the parties, the Court amended the discovery schedule so that Plaintiff's expert reports were required to be served on or before October 15, 2012, followed by service of Defendant's expert reports on or before October 31, 2012, and all discovery was to be completed by November 30, 2012. Doc. 9.

On June 15 and September 6, 2012, Plaintiff's expert Neal A. Growney ("Growney") inspected the Ladder and issued his expert report on October 12, 2012, entitled "Engineer's

Preliminary Report," in which he stated, "It is my understanding that discovery is ongoing and metallurgical testing of the Ladder is planned."  Doc. 16 at p.2.  According to Plaintiff, "[t]he foregoing statement was the first time the Defendant was put on notice that metallurgical testing of the Ladder would be sought by Plaintiff."  *Id*.  In response to receipt of Growney's report, Defendant's attorneys stated that they would object to any amendment or supplement of such expert report.  *Id.* at Ex. 1.

At a status conference on December 19, 2012, the Plaintiff represented to the Court that the parties had exchanged expert reports but required additional time for expert depositions. During the conference, Defendant informed the Court that Growney's report seemed to be a preliminary, and not final, report and indicated their concern that Plaintiff would seek to submit an additional report.  In response, Plaintiff stated that he would not submit an additional report. At the conclusion of the conference, the Court set the deadline for completion of expert depositions and discovery cut-off for January 31, 2013.  Plaintiff represents to the Court that at the conference, Plaintiff stated that they would be seeking Defendant's cooperation for metallurgical testing.  *See id.*

On February 11, 2013, Plaintiff requested, with the consent of Defendant, an extension of the discovery cut-off date to March 22, 2013.  Plaintiff stated that additional time was needed to finish Growney's deposition and conduct the deposition of Mr. Dale King of the Werner Ladder Company.  Doc. 15.

In support of the instant request to extend discovery, Plaintiff has included as exhibits documentation of his purported attempts to raise the issue of metallurgical testing with defense counsel during the discovery period, on January 10 and February 10, 2013.  *See* Doc. 16, Exs. 9-10.  For example, email correspondence dated January 10, 2013 from Plaintiff's counsel to

Defendant's counsel references "strength testing we request to be done on the subject ladder," and notes that "[o]f course we must agree on the lab before it can be scheduled." *Id.* at Ex. 9.

At a conference on March 22, 2013—the date of the discovery cut-off—Plaintiff indicated to the Court that it would seek to conduct metallurgical testing on the Ladder. The Court directed Plaintiff to submit a letter brief by May 31, 2013 addressing why he should be permitted to conduct testing on the ladder, and directed Defendant to submit its letter brief in opposition by June 14, 2013. *See* Minute Entry, No. 11 Civ. 5747 (Mar. 22, 2013).

On May 25, 2013, Plaintiff submitted a letter requesting an extension of time to conduct metallurgical testing of the Ladder as supplemental discovery pursuant to Rule 26 of the Federal Rules of Civil Procedure. Doc. 16. By letter dated June 14, 2013, Defendant opposed Plaintiff's request to permit metallurgical testing.

## II. Legal Standard

Under the Federal Rules of Civil Procedure, discovery is permitted "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Discoverability is also determined by the broad standard of relevance. *See Gucci Am., Inc. v. Guess?, Inc.*, 790 F. Supp. 2d 136, 139 (S.D.N.Y. 2011) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (relevance standard is broad in order "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case")). As part of the discovery process, Rule 16(b) requires district courts to enter scheduling orders that limit the parties' time to complete discovery. Fed. R. Civ. P. 16(b)(3). *McKay v. Triborough Bridge & Tunnel Auth.*, No. 05 Civ. 8936 (RJS), 2007 WL 3275918 (S.D.N.Y. Nov. 5, 2007). Rule 16(b) (4) of the Federal Rules of Civil Procedure provides that a discovery schedule "may be modified only for good cause and with the judge's

consent." Fed. R. Civ. P. 16(b)(4). To demonstrate good cause, a party seeking an extension must show that the relevant deadline could not reasonably be met despite that party's diligence. *See* Fed. R. Civ. P. 16, Advisory Committee Notes, Subdivision (b) (1983 Amendment); *see also Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003).

"A trial court enjoys wide discretion in its handling of pre-trial discovery, and its rulings with regard to discovery are reversed only upon a clear showing of an abuse of discretion." *Biosafe-One, Inc. v. Hawks*, 379 F. App'x 4, 9 (2d Cir. 2010) (citing *In re Fitch, Inc.,* 330 F.3d 104, 108 (2d Cir. 2003)); *see also Wills v. Amerada Hess Corp.,* 379 F.3d 32, 41 (2d Cir. 2004) (a district court has broad discretion "to direct and manage the pre-trial discovery process."); *Elliott Associates v. Republic of Peru*, No. 96 Civ. 7917 (RWS), 1997 WL 436493 (S.D.N.Y. Aug. 1, 1997) (district courts generally have considerable discretion to extend deadlines contained in pretrial orders) (citations omitted)). Courts have the express authority to limit the extent of discovery in certain situations, including where "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action" or where the "burden or expense of the proposed discovery outweighs its likely benefit." *See* Fed. R. Civ. P. 26(b)(2)(C)(ii), (iii); *Arista Records LLC v. Lime Group LLC*, 2011 WL 781198, at *2 (S.D.N.Y. Mar. 4, 2011). "Where a party is aware of the existence of documents or other information before the close of discovery and propounds requests after the deadline has passed, those requests should be denied." *Gucci Am., Inc.*, 790 F. Supp. 2d at 140 (citation omitted).

Plaintiff brings the instant request to reopen discovery pursuant to Federal Rule of Civil Procedure 26(e). Doc. 16. Rule 26(e) requires that disclosures made pursuant to Rule 26(a), which includes expert disclosures, be supplemented when the party who made the disclosure "learns that in some material respect the disclosure . . . is incomplete or incorrect, and if the

4

additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(b)(2)(C)(ii).  It is assumed that at the time an expert issues his report, that report reflects his full knowledge and complete opinions on the issues for which his opinion has been sought.  *See Lidle v. Cirrus Design Corp.*, 2009 WL 4907201, at *5 (S.D.N.Y. Dec. 18, 2009) (citing Fed. R. Civ. P. 26(a)(2)(B) ("The [expert] report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor.")).  It is "only if the expert subsequently learns of information that was previously unknown or unavailable, that renders information previously provided in an initial report inaccurate or misleading because it was incomplete, that the duty to supplement arises." *Lidle*, 2009 WL 4907201, at *6; *see also Hunt v. CNH Am. LLC*, 857 F. Supp. 2d 320, 339 (W.D.N.Y. 2012), aff'd, 511 F. App'x 43 (2d Cir. 2013) (citing *Innis Arden Golf Club v. Pitney Bowes, Inc.*, 2009 WL 5873112, at *3 (D. Conn. Feb. 23, 2009) (citations and quotations omitted)).

### III.     Plaintiff's Request to Supplement Disclosure

Plaintiff had ample opportunity to complete (or seek judicial intervention regarding) metallurgical testing of the Ladder prior to the close of discovery in this case after repeated extensions on March 22, 2013.  After inspecting the Ladder twice, Plaintiff's expert, Growney, issued his expert report on October 12, 2012, in which he stated his understanding that metallurgical testing of the Ladder had been planned.  Doc. 16.  Notwithstanding Growney's statement, and notwithstanding Plaintiff's claim that he will be unable to satisfy his burden of proof in the absence of this crucial information, Plaintiff failed to conduct metallurgical testing during the five months that followed.  Then, *on* the discovery cut-off date, Plaintiff sought leave of the Court for yet another extension of the discovery period to conduct metallurgical testing.

There is no dispute that Plaintiff has been in possession of the Ladder since the outset of

this litigation and that—as Plaintiff himself notes—as of October of 2012, both parties became aware of the purported plans for metallurgical testing, based upon the comments made by Plaintiff's expert. While Plaintiff has attempted to explain that he refrained from conducting testing on the Ladder in order to avoid a claim by Defendant of evidence spoliation, and indicated that Defendant has failed to respond to his "repeated" requests for metallurgical testing, Plaintiff has failed to explain his delay in making this request for leave of the Court. Even if it is true, as Plaintiff suggests, that Defendant failed to reply to Plaintiff's attempts to raise the issue of metallurgical testing through email correspondence on January 10, 2013 and February 10, 2013, Doc. 16 at Ex. 9-10, two emails over a four-month time period (October 2012 to March 2013) fail to demonstrate diligence. Plaintiff had ample opportunities not only to conduct testing of the Ladder in his possession, but also to notify the Court of Defendant's failure to cooperate in advance of the discovery cut-off date. Accordingly, Plaintiff's request to reopen discovery to conduct metallurgical testing is denied. *See Gucci Am., Inc.*, 790 F. Supp. 2d at 142 (citing Fed. R. Civ. P. 26(b)(2)(c)(ii)) (finding that because plaintiff knew of its need for particular information on sales to foreign purchasers well before the fact discovery deadline, plaintiff failed to raise the issue with the Court at the appropriate time)); *Shaheen v. Naughton*, 222 F. App'x 11, 13 (2d Cir. 2007) (affirming district court's denial of plaintiff's request to extend the discovery deadline, brought "on the eve of expiration of a seven-month discovery deadline, without a statement of good cause.").

Furthermore, Plaintiff's request to seek metallurgical testing of the Ladder does not rely on any information that was "previously unknown or unavailable" to Plaintiff or Growney. Thus, Plaintiff cites no new information that would justify Plaintiff's belated request to conduct metallurgical testing of the Ladder as a supplemental report pursuant to Rule 26. *See Lidle*, 2009

6

WL 4907201, at *6 (finding that the plaintiffs' "Supplemental Expert Report" served without scheduling permission did not qualify as a supplemental report pursuant to Rule 26 because it did not rely on any information that was previously unknown or unavailable to the expert, the plaintiffs controlled the materials tested, and the report cited no new information).

### IV. Conclusion

For the reasons set forth above, Plaintiff's application for a further extension of the discovery period to conduct metallurgical testing is DENIED.

It is SO ORDERED.

Dated: October 3, 2013
       New York, New York

_____
Edgardo Ramos, U.S.D.J.